468                    80 Mass. App. Ct. 468 (2011)

Central Water District Associates v. Cedar Meadow Lake Watershed District.

CENTRAL WATER DISTRICT ASSOCIATES vs. CEDAR MEADOW
LAKE WATERSHED DISTRICT.

No. 10-P-773.

Worcester. February 10, 2011. - September 26, 2011.

Present: KANTROWITZ, MILLS, & VUONO, JJ.

*Eminent Domain,* Damages, Interest. *Damages,* Eminent domain, Interest.
*Interest.*

In an eminent domain case, the judge did not err in determining that the
plaintiff landowner, who sought a higher rate of interest than that provided
by G. L. c. 79, § 37, failed to meet its initial burden of showing that the
statutory rate fell significantly or substantially below the standard of con-
stitutional reasonableness, where the plaintiff offered only a single compara-
tor rather than a range or composite of interest rates based on different
types of low-risk securities available. [471-473]
This court concluded that in an eminent domain case involving an extended
delay between the time of the taking and the time of payment, the compound-
ing of interest was necessary to place the landowner in as good a position
pecuniarily as it would have occupied if the payment had coincided with
the appropriation. [473-475]

CIVIL ACTION commenced in the Superior Court Department on
July 25, 1997.

The case was tried before *John S. McCann,* J.; a motion for
summary judgment on the issue of the interest award was heard
by him, and entry of final judgment was ordered by him.

*John J. Egan* for the plaintiff.

*Ernest P. DeSimone* for the defendant.

VUONO, J. The issue presented in this eminent domain case is
whether the rate and method of calculating interest set by G. L.
c. 79, § 37,[1] as applied to the land taking in question, provides

---

[1]General Laws c. 79, § 37, provides in relevant part: "Where the period for
which prejudgment interest is owed is more than one year, such interest for the
first year shall be calculated in accordance with the preceding sentence, and

the plaintiff, Central Water District Associates (CWDA), with just and reasonable compensation as mandated by the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights.[2] Upon a motion for summary judgment by the defendant, Cedar Meadow Lake Watershed District (district),[3] a Superior Court judge determined that CWDA did not meet its initial burden of showing that the statutory interest rate is so low as to render it unconstitutional, and therefore, the judge utilized the statutory interest rate to calculate the interest on CWDA's jury award. The judge also concluded that CWDA was not entitled to compound interest and ordered that the judgment be entered with simple interest. We affirm the judgment in all respects except in its denial of CWDA's request for compound interest. On this issue, we reverse.

*Background.* We summarize the facts contained in the summary judgment record. On May 30, 1997, the district took by eminent domain approximately 144 acres of land (property) owned by CWDA, located in the towns of Leicester and Spencer. The property encompasses a body of water known as Cedar Meadow Lake. Dissatisfied with the district's pro tanto payment of $87,200, CWDA brought this action under G. L. c. 79, § 14, for an assessment of damages. As a result of numerous continuances (filed and assented to by both parties), the case remained pending in Superior Court for over a decade. Twelve years after the original complaint was filed (and two weeks before the scheduled trial date), CWDA moved to amend its complaint to add a claim challenging the statutory rate of interest on constitutional grounds.[4]

---

such interest for each additional year shall be calculated on the principal amount due at an annual rate equal to the weekly average one-year constant maturity treasury yield, as published by the board of governors of the Federal Reserve System, for the calendar week preceding the beginning of each additional year."

[2]Under the Fifth Amendment the owner of land taken by the government is entitled to "just compensation." Under art. 10, an owner is entitled to "reasonable compensation."

[3]The district is a body politic and corporate created by special act of the Massachusetts Legislature on December 1, 1993. St. 1993, c. 268, §§ 1 et seq. The special act empowered the district to acquire real estate by eminent domain, among other powers. St. 1993, c. 268, § 3(f).

[4]CWDA's original complaint did not allege that the interest rate set by G. L. c. 79, § 37, was inadequate to provide it with just compensation. Nor did the complaint include a request for compound interest.

Specifically, the amended complaint sought a higher rate of interest than that provided by the statute and requested that the interest be compounded. The motion to amend was allowed over the district's opposition, which had asserted that the amendment was untimely and prejudicial in that the district was not prepared to present evidence rebutting CWDA's claim. To avoid any prejudice to the district as a result of the short notice, the judge bifurcated the trial and proceeded first with a jury trial on the issue of damages to be followed, if necessary, with a determination of the proper rate of interest.[5]

On September 4, 2009, the jury returned a verdict that assessed damages for the taking at $1,157,635. Thereafter, in accordance with a predetermined schedule, CWDA submitted a trial memorandum outlining the basis for its claim that the statutory rate of interest set by G. L. c. 79, § 37, when applied to a taking that occurred in 1997 with no payment until 2009, is significantly and unreasonably lower than that which a prudent investor would have earned, and that no "prudent investor" would fail to secure compound interest on a multi-year investment. CWDA also submitted a report prepared by an expert economist, Craig L. Moore, who compared the rates earned on a one-year constant-yield United States Treasury bill (the measure of interest utilized by the statute) with those earned by investing in a portfolio of Moody's AAA-rated corporate bonds (described in the report as a "very conservative secure investment vehicle") during the years 1997 through 2008.[6] The report showed that during each of the twelve years at issue, the returns earned on the corporate bonds were higher than the rates earned on one-year Treasury bills. Depending on the year, the difference in rates varied between 0.63 percent and 4.39 percent. The report also set forth Moore's opinion that compound interest, rather than simple interest, would be the appropriate method for calculating damages.

Against this backdrop, the district filed a motion for summary judgment seeking a judicial determination that the statutory rate was constitutionally sufficient and, therefore, that rate should be applied to the jury award. The motion, which was not

---

[5]It appears that the parties agreed to this procedure, and in any event, because the district did not file a cross appeal, the issue whether the judge erred in allowing CWDA to amend the complaint is not before us.

[6]The report is part of the record on summary judgment.

supported by an affidavit from an investment professional, asserted that the district was entitled to judgment as a matter of law because CWDA was unable to satisfy its burden of showing that the statutory interest rate was unreasonable. CWDA opposed the motion, relying on the findings of its expert summarized above. As noted, the judge entered judgment for the district.[7]

*Discussion.* We review the allowance of motions for summary judgment de novo and, in so doing, view the record in the light most favorable to the nonmoving party. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991)

Under the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights, when a governmental entity "takes" private property for public use, it must pay "just" and "reasonable" compensation for that property. *Liberty Square Dev. Trust* v. *Worcester*, 441 Mass. 605, 611 (2004). Where, as in this case, there is a lapse between the time of the taking and the time of compensation, "the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation." *Kirby Forest Indus., Inc.* v. *United States*, 467 U.S. 1, 10 (1984) (citations omitted). "Because [interest] is a component of the compensation mandated as a matter of constitutional law, the ultimate determination as to what interest rate will provide adequate compensation for delay in payment is a judicial [rather than a legislative] function." *Liberty Square, supra* at 611-612, citing *Verrochi* v. *Commonwealth*, 394 Mass. 633, 638 (1985).

The Legislature, however, is free to establish a prima facie measure of the proper interest rate to be applied on damage awards in eminent domain cases. *Liberty Square, supra.* Where the Legislature has done so (as ours has in G. L. c. 79, § 37), the rate it sets is presumptively reasonable. *Ibid.* ("any rate set by statute enjoys a rebuttable presumption that it is a reasonable rate that would satisfy constitutional requirements").[8] Thus,

---

[7]At the hearing on its motion for summary judgment, however, the district focused on the judge's ruling allowing the complaint to be amended and requested that the judge reconsider that decision. However, no formal motion for reconsideration was filed, and the judge did not rule on the district's request.

[8]In *Liberty Square, supra,* the Supreme Judicial Court observed that the presumption of reasonableness is strengthened where the Legislature utilizes a

according to our case law, a landowner who seeks a higher rate of interest than that provided by statute must clear two separate hurdles. First, the landowner must rebut the presumption of reasonableness by showing that the statutory rate is "significantly or substantially" below the standard of constitutional reasonableness. *Id.* at 612. "If (and only if)" this threshold burden is met will the question of "what rate will represent just and reasonable compensation for the delay in payment" arise. *Id.* at 613 (delineating a distinct two-step analysis).[9]

Applying these principles (de novo) to the summary judgment record, we arrive at the same conclusion as the judge, that is, CWDA has failed to establish that the rate of interest set by G. L. c. 79, § 37, fell significantly or substantially below the standard of constitutional reasonableness. Therefore, CWDA failed to rebut the presumption that the statutory rate meets the constitutional requirements. CWDA's primary argument is that the disparity between the statutory rate and the AAA-rated corporate bond rate cited by their expert demonstrates that the "statutory rate is so low that it fails to meet the constitutional standard of reasonableness."[10] *Liberty Square, supra* at 612. However, "[t]he concept of a 'reasonable' interest rate to compensate for delay in payment connotes a range of figures, not one

---

variable market-driven measure, rather than a fixed measure, to calculate interest. *Id.* at 615 ("courts have been inclined to show greater deference to statutory rates that rise and fall in accordance with market forces").

[9]It is not clear whether this second inquiry is a question of law to be decided by a judge or a question of fact to be determined by the a jury or the fact finder. Compare *Liberty Square, supra* at 613 ("[i]f . . . the statutory rate is no longer applicable, . . . it is then up to the judge to determine what interest figure to apply"), with *M.B. Claff, Inc.* v. *Massachusetts Bay Transp. Auth.*, 441 Mass. 596, 600 (2004) ("a claim that the statutory rate of interest is unconstitutional as applied to the plaintiff is one that needs to be proved, and a proper articulation in a timely pleading followed by proof at trial is the customary method for establishing a party's claim"). See also *Waltham Tele-Communications* v. *O'Brien*, 403 Mass. 747, 749 (1989) (suggesting that "art. 15 of the Massachusetts Declaration of Rights secures the right to a jury determination of just compensation in eminent domain cases"). Given our conclusion that CWDA has failed to meet its threshold burden of rebutting the presumption that the rate utilized by the statute is reasonable as applied, we need not resolve this ambiguity.

[10]We are unpersuaded by CWDA's alternative argument that whether the statutory rate falls substantially below what a "reasonable" prudent investor would have earned is never appropriately determined as matter of law.

precise figure." *Ibid.* By offering only a single comparator, rather than a range or composite of interest rates based on different types of low-risk securities available (for example, thirty-year Treasury bonds, five-year Treasury notes, six-month bankers' acceptances, or the prime rate), CWDA has failed to adequately identify what constitutes a constitutionally reasonable rate. Consequently, it has failed to meet its burden of establishing that the statute falls "significantly or substantially" below that standard.[11] Because CWDA failed to establish the first prong of the test, we need not determine what rate would "represent just and reasonable compensation for the delay in payment." *Id.* at 613.

We now turn to CWDA's assertion that it has been denied just and reasonable compensation because the statute does not provide for the compounding of interest.[12] The question "whether the constitutional requirement of just and reasonable compensation mandates the compounding of interest in eminent domain cases" was specifically left open by the Supreme Judicial Court in *Liberty Square. Id.* at 611 n.9. Noting the lack of conclusive authority, the judge ultimately rejected CWDA's argument (asserted largely through its expert) that an award of only simple interest will always be unreasonable because no prudent investor would choose to let interest income remain "idle."

We are persuaded that, given the extended delay between the time of the taking and the time of payment, the compounding of interest is necessary in this case to place CWDA "in as good a position pecuniarily as [it] would have occupied if the payment

---

[11]In so holding, we acknowledge that CWDA's report reflects a disparity in excess of four percent in four of the twelve years at issue. Were this disparity shown to be consistent across similar safe investment vehicles, it could be constitutionally significant. In the absence of such data, however, it is not.

[12]General Laws c. 79, § 37, provides that "[w]here the period for which prejudgment interest is owed is more than one year, . . . interest for each additional year shall be calculated *on the principal amount due* . . . ." (emphasis added). The emphasized language was added to the statute by St. 2004, c. 352, § 36. The prior versions of the statute did not specifically require simple interest only on the damages award. Historically, "[t]he general rule in equity and law is to allow simple interest by way of damages . . . . But this general rule is not always followed. Compound interest sometimes is allowed . . . for the purpose of affording a just and equitable settlement." *Arnold* v. *Maxwell*, 230 Mass. 441, 445 (1918), and cases cited. See *Barnes* v. *Springfield*, 268 Mass. 497, 511 (1929) (applying the general rule to eminent domain).

had coincided with the appropriation."[13] *Kirby Forest*, 467 U.S. at 10. In so holding, we align ourselves with those courts who have recognized in factually similar cases that:

> "[t]he economic reality is simply that if the full value of just compensation had been deposited with the Court contemporaneously with the filing of the declaration of taking, the landowner would have been able to earn compound interest. Thus, prohibiting the landowner from recovering compound interest on the deficiency acts to retroactively reduce the value of just compensation at the time of the taking by undervaluing its present worth."

*United States* v. *319.46 Acres of Land*, 508 F. Supp. 288, 291 (W.D. Okla. 1981).[14]

The district's arguments in favor of simple interest are unavailing. The district contends that using compound interest will "encourag[e] dilatory acts by claimants" and complicate interest adjudications by raising the issue of responsibility for delays. We reject these arguments. First, unexcused delays should not be tolerated by the opposing party or the court. Second, we are confident that our judges have the ability to sort out any "complications." The undeniable fact is that since May 30, 1997, CWDA has been deprived of the opportunity to invest a considerable sum of money over a lengthy period of time. In these circumstances, an award of simple interest is unreasonable and, therefore, unconstitutional. Accordingly, the judgment is reversed insofar as it determined the interest on the damages awarded the

---

[13]We stop short of holding that compound interest will be required in all cases or, concomitantly, that the statute as drafted is per se unconstitutional. Rather, the statute "sets a floor, not a ceiling," on the interest rate to be paid. *Verrochi* v. *Commonwealth*, 394 Mass. 633, 639 (1985), and cases cited. We simply conclude that on the facts of this case the compounding of interest is required to meet the constitutional standard of just and reasonable compensation.

[14]See *United States* v. *Blankinship*, 543 F.2d 1272, 1274 (9th Cir. 1976); *United States* v. *429.59 Acres of Land*, 612 F.2d 459, 465 (9th Cir. 1980); *Dynamics Corp. of America* v. *United States*, 766 F.2d 518, 520 (Fed. Cir. 1985); *United States* v. *Northern Pac. Ry. Co.*, 51 F. Supp. 749, 750 (E.D. Wash. 1943); *United States* v. *164.25 Acres of Land*, 159 F. Supp. 728, 730 (D.N.H. 1957); *Bowles* v. *United States*, 31 Fed. Cl. 37, 40 (1994); *Lea Co.* v. *North Carolina Bd. of Transp.*, 317 N.C. 254, 264 (1986); *520 E. 81st St. Assocs.* v. *State*, 19 A.D.3d 24, 30-31 (N.Y. 2005).

plaintiff. A new judgment is to enter with compound interest on the award. The remainder of the judgment is affirmed.

*So ordered.*