McHugh, J.
Plaintiff, Sean Murphy, has brought an action for declaratory judgment seeking a declaration that G.L.c. 22E, together with St. 1997, c. 106, §8, does not apply to him. Plaintiff contends that he is not subject to the terms of c. 22E because, although he previously was convicted of an offense listed in c. 22E, he is currently incarcerated because of his conviction for a crime that is not listed in c. 22E.[2] Defendants now move for judgment on the pleadings and a declaration that St. 1997, c. 106, §8 requires plaintiff to submit a blood sample. Plaintiff cross-moves for judgment on the pleadings, seeking, of course, a judgment that he is not required to submit a sample.
BACKGROUND
Chapter 106 of the Statutes of 1997 was enacted on September 30,1997 and went into effect on December 29, 1997. Section 7 of St. 1997, c. 106, inserted c. 22E into the Massachusetts General Laws. G.L.c. 22E, §3 provides in pertinent part that
[a]ny person convicted of a [listed] offense[3] ... or of an attempt or a conspiracy to commit any of the [listed] offenses shall submit a DNA sample . . . within 90 days of such conviction, in accordance with regulations or procedures established by the director.
Although not codified in the General Laws, St. 1997, c. 106, §8 provides in pertinent part as follows:
Any person convicted of any [listed] offense .. . who is incarcerated in any prison or house of correction on the effective date of this act [December 29,1997], notwithstanding the date of such conviction, shall submit a DNA sample . . . within 90 days of the effective date of this act or prior to release from custody, whichever first occurs. Any person currently on probation or parole as a result of a conviction or judicial determination resulting from a charge of any of the above listed offenses, notwithstanding the date of such conviction or judicial determination, shall submit a DNA sample . . . within 90 days of the effective date of this act.
On June 5, 1985, twelve and one-half years before the statute became effective, plaintiff was convicted of armed robbery (G.L.c. 265, §17), a listed offense, and was sentenced to six to fifteen years in the State prison. Plaintiff “wrapped up” that sentence in January 1993, and was discharged. Plaintiff is presently incarcerated at M.C.I. Shirley for a crime that is not listed in c. 22E, §3.[4]
DISCUSSION
“The effect of a motion for judgment on the pleadings is ‘to challenge the legal sufficiency of the complaint.’ ” Minaya v. Mass. Credit Union Share Ins. Corp., 392 Mass. 904, 905, quoting Burlington v. District Attorney for the Northern District, 381 Mass. 717, 717-18 (1980). In ruling on the motion, “all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false.” Minaya, 392 Mass. at 905, quoting 5 C.A. Wright & A.R. Miller, Federal Practice & Procedure §1368, at 691 (1969). Accordingly, for purposes of defendants’ motion for judgment on the pleadings, this Court will accept as true the factual allegations stated in plaintiffs complaint.
Plaintiff contends that G.L.c. 22E, together with St. 1997, c. 106, §8, applies only to persons who are currently incarcerated for an offense listed in c. 22E. Plaintiff, therefore, claims that because he is presently serving a sentence for an offense not listed in c. 22E, he is not subject to the terms of c. 22E and, thus, does not have to submit a DNA sample. Defendants, on the other hand, argue that c. 22E, by its very terms, applies to all incarcerated individuals and requires them to submit a sample if, at any time in their lives, they have been convicted of a listed offense.
The requirement that courts construe statutoiy language in accordance with the plain meaning of that language does not mean that a court must, or can, ignore the context in which the language was used or the Legislature’s likely purpose in using it. Instead, “[a] statute’s words must be accorded their plain and ordinary meaning ‘considered in connection with the cause of its enactment, the preexisting state of the law, the mischief to be remedied and the main object to be accomplished.’ ” A. Belanger & Sons v. Joseph M. Concannon Corp., 333 Mass. 22, 25 (1955), quoting Brown v. Robinson, 275 Mass. 55, 57 (1931).
Defendants contend that because Plaintiff was convicted of armed robbery, a listed offense, and because he was incarcerated on December 29, 1997, the act’s effective date, he falls within the literal terms of St. 1997, c. 106, §8 and must submit a blood sample. *83 Adopting that construction would produce a number of results and distinctions with no apparent rational basis.
First of all, adopting that construction would mean that an individual who had been convicted of a listed offense, say, thirty years ago, had led a blameless life since then but who found herself serving a one-week sentence for OUI on the act’s effective date would be required to submit a sample. Submission of such a sample, of course, represents no petty indignity. Now and in the future, the blood the Commonwealth seeks to collect is the key to many of an individuars most intimately defining elements. Although regulatory safeguards are in place to prevent broad governmental roaming through collected samples, submission of such samples clearly gives government the power to conduct intimate inquiries of a type it could not even begin to approach absent the sample’s possession. It seems unlikely that the Legislature would have intended a required surrender of that key turn solely on the fortuity of its physical custody of an individual on a certain arbitrarily selected date.
Second, but related, is that the defendants’ construction means that the person described in the preceding paragraph would be required to submit a sample but that the person who was with her during the armed robbeiy, who also was convicted of that armed robbeiy, who served and completed an identical sentence, who also subsequently led a blameless life until convicted of OUI thirty years later, who also received a one-week sentence to the house of correction on the OUI conviction but who did not begin serving that sentence until the day after the Act’s effective date would not be required to submit a sample. There just is no logic whatsoever to that result and a court should be extremely loath to attribute to the Legislature a statutory plan that is unsupported by any logical foundation. On the contrary,
[i]f. . . the language of [a] statutes is “fairly susceptible to a construction that would lead to a logical and sensible result,” Bell v. Treasurer of Cambridge, 310 Mass. 484, 489 (1941) [courts] will construe them so “as to make [them] . . . effectual piece[s] of legislation in harmony with common sense and sound reason.” Morrison v. Selectmen of Weymouth, 279 Mass. 486, 492 (1932).
Commonwealth v. A Juvenile, 16 Mass.App.Ct. 251, 254 (1983).
Finally, St. 1997, c. 106, §8, where probationers and parolees were concerned, the Legislature expressly limited the submission requirement to those who were on probation or parole for a listed offense on the date the act became effective.[5] The state’s power over such individuals on probation and parole is extremely broad. See generally, e.g., Commonwealth v. Durling, 407 Mass. 108, 111-12 (1990). There thus is no apparent reason why the Legislature would want to limit the submission requirement to individuals on probation or parole for a conviction for a listed offense on the statute’s effective date and not impose a similar limitation on submission of samples by those who were incarcerated.
The foregoing difficulties with the defendants’ proposed interpretation of the statute can be resolved by construing it in the fashion plaintiff suggests, i.e., by limiting the submission of samples to those who are incarcerated for a listed offense on the Act’s effective date.[6] Although that construction does not solve all of the problems the statute presents, it is a construction consistent with the statutoiy language and allows §8 to serve as a rational mechanism for implementing a sample collection scheme. That therefore is the construction I am of the opinion the statute should be given.
ORDER
In light of the foregoing, it is hereby ORDERED that:
1. Plaintiffs motion for Judgment on the Pleadings should be, and it hereby is, ALLOWED;
2. Defendants’ cross-motion for Judgment on the Pleadings should be, and it hereby is, DENIED;
3. Judgment shall enter declaring that St. 1997, c. 106, §8 does not apply to plaintiff because he was not incarcerated on December 29, 1997 for an offense listed in G.L.c. 22E, §3, and, thus, he is not required to submit a blood sample the statute on some occasions requires.

Murphy’s motion proceeds strictly on a theory that the statute, as properly construed, does not apply to him. In his motion, he does not contest the constitutionality of c. 22E nor does he contest the constitutionality or propriety of its application to individuals convicted of crimes before' the statute was enacted. Some of those issues have been raised elsewhere. See, e.g., Landry v. Attorney General, et al., Civil No. 98-462, (Middlesex Super. Ct.) [9 Mass. L. Rftr. No. 4, 74 (November 9, 1998), immediately preceding this opinion]. Nevertheless, any exercise in statutory construction must recognize that arbitrary or irrational legislative enactments are unconstitutional, see, e.g.. Bond Liquor Store, Inc. v. Alcoholic Beverage Control Commission, 336 Mass. 70, 77 (1957), and that statutes should be construed in a manner likely to avoid constitutional difficulties other constructions might produce. Waltham Tele-Communications v. O’Brien, 403 Mass. 747, 751 (1989), quoting Attorney General v. Colleton, 387 Mass. 790, 800 (1982).

The listed offenses are G.L.c. 265, §§1, 13, 13B, 13F, 13H, 14, 15, 16, 17, 18, 18A, 18B, 18C, 22, 22A, 23, 24, 24B and 26, G.L.c. 266, §§14 and 15, and G.L.c. 272, §§2, 3, 4A, 4B, 16, 17, 29, 29A, 29B, 35, 35A, and 53A.

The pleadings do not reveal the nature of the crime.

That appears, without the benefit of a contested proceeding, to be the most logical construction of the statute. However, one will recall that the Legislature’s actual language is this:
Any person currently on probation or parole as a result of a conviction or judicial determination resulting from a charge of any of the above listed offenses, notwithstanding the date of such conviction or judicial determination, shall *84 submit a DNA sample . . . within 90 days of the effective date of this act.
Use of the term “currently” may give rise to problems of construction that this case does not involve. However those problems are resolved, it is clear that the Legislature targeted for required sample submission only those whose conviction of a listed offense had a present nexus to state supervision and control.

To be sure, that construction, at least theoretically, leaves open the possibility that an individual convicted of a listed offense before the statute’s effective date and incarcerated for that offense on the statute’s effective date would be required to submit a sample while an individual convicted of a listed offense before the effective date but who did not begin to serve his or her sentence until after the statute became effective would not. As a practical matter, the second individual probably does not exist. If he or she does, then, assuming the statute’s retroactivity — not questioned here but necessarily an unstated major premise that necessitates the inquiry this memorandum undertakes — he or she nevertheless would in all likelihood be required to submit a sample because of the 90-day provisions of §3.