**COLUMBIA IRRIGATION DISTRICT, a corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**STATE OF WASHINGTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16047.**

United States Court of Appeals
Ninth Circuit.

April 22, 1959.

Leavy & Taber, James Leavy, Pasco, Wash., John J. O'Connell, Atty. Gen., E. P. Donnelly, Asst. Atty. Gen., State of Washington, for appellants.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Harold S. Harrison, Attorneys, Department of Justice, Washington, D. C., Dale M. Green, U. S. Atty., Spokane, Wash., Ronald R. Hull, Asst. U. S. Atty., Yakima, Wash., for appellee.

Before DENMAN, Senior Circuit Judge, FEE and HAMLIN, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This proceeding was instituted by the United States in December, 1952, to acquire all right, title and interest of Columbia Irrigation District in 3,479.73 acres of land for use in connection with the McNary Lock and Dam Project. Possession was granted effective March 31, 1953. An amended complaint was filed in December, 1954, to acquire the fee simple title to Parcel I, consisting of 13 tracts of land and containing 132.42 acres, all right, title and interest of Columbia Irrigation District, which is the parcel here in controversy, consisting of 11 segments containing 3,292.71 acres, which is Parcel II, and perpetual easements for flowage purposes and for a drainage ditch over 2 tracts containing a total of 0.58 of an acre, designated as Parcel III. The three parcels were physically contiguous.

The State of Washington had not orginally been joined as a party. But in December, 1955, the State was added as a party so that any claim it had as a holder of bonds which were a lien upon the real property of the District could be adjudicated.

In June, 1956, the government filed a petition for judgment as to Parcel II, asking, among other things, that a decree be entered determining that neither the Columbia Irrigation District nor the State of Washington held any compensable interest in the lands described in Parcel II. The court treated this petition as a motion for summary judgment. This petition was denied by formal order on October 9, 1958, apparently upon the ground that factual issues were presented. On December 11, 1956, the court suggested that the issue as to Parcel II was whether the District had a compensable interest therein at all and that this

should be severed from the trial on Parcels I and III. To the severance Columbia objected. The court also intimated that he was convinced at the time that neither Columbia nor the State had any compensable interest. Accordingly, a hearing was had on Parcel II separately, but the whole transaction was extremely confused. No proof, as such, was introduced. There was a stipulation that the fee simple title to all the lands in Parcel II had been acquired by the government from the individual owners either by purchase or by condemnation. There was no mention by the court of easements or rights of way. An offer of proof was called for by Columbia. The main insistence in the argument that followed was upon the fact that the agents of the government had agreed to a contract to pay Columbia for its rights in these lands, but had finally refused to execute the formal document. Great emphasis was laid upon the fact that these lands were included in the boundaries of the District and that the District would lose a great portion of its revenue if these were withdrawn. The court correctly gave no weight to these arguments.

However, in this statement counsel for Columbia asked for a consideration of severance damage on account of the cutting off of Parcel II from Parcels I and III, which were the main works of Columbia. He called attention to the fact that "the land taken from Columbia Irrigation District, including rights of way and improvements, changes the Columbia Irrigation District from an economically feasible operating Irrigation District to an uneconomic Irrigation District."

He also said:

"The lands acquired by the Government for the McNary Lock and Dam Project had water rights appurtenant thereto and each tract in such land received benefits from being included within the District and the District was ready at all times to supply service by way of irrigation water to said lands and still is."

"The lands embraced in the District are virtually useless without the application of irrigation water as furnished by the facilities of the Columbia Irrigation District due to the arid nature of the land."

"Approximately 132 of the total acres taken, as above-mentioned, are acres of land owned in fee by the Columbia Irrigation District and several thousand dollars worth of irrigation facilities were taken, most of which are included in the lands described in Parcel I."

Specifically, he described certain main canal and laterals. These easements were thus claimed as property rights mainly upon Parcels I and III, but descriptions of the course of the main canal over lands included in the 11 segments of Parcel II, which appear in Exhibit "A" to the complaint, are extremely numerous. The course of the easements claimed for the laterals seems to fall largely in Parcel II.

It thus appears that Columbia laid claim to certain easements overlying the fee simple titles of the lands in Parcel II. If the easements were in existence, the lands held by Columbia in Parcel I would have constituted the dominant tenement, and the lands held by private owners in Parcel II would have been servient tenements. The government did not divest Columbia of such real property, if there were easements, by condemnation or purchase of the private interests.

If there were a property interest, the government would have been constrained by the provision of the Constitution to pay just compensation therefor. Whether these easements were in existence and what the extent of this property interest was this Court is unable to determine. It is sufficient basis for the denial of summary judgment. If there were a property right as claimed, it could not be divested by the simple process of granting a summary judgment because there was a claim for damage and a claim for compensation. These were material

questions of disputed fact. Under the Civil Rules, these could not have been determined adversely without trial.

■ If it be considered there was a trial, the government introduced no proof that Columbia had no compensable interest. Since the government had judgment entered condemning this very interest, it was erroneous to conclude that no "just compensation" need be paid therefor. The court refused the offer of proof by Columbia. This means that the Irrigation District was not even permitted to introduce proof to establish that there was property in Parcel II of which it was divested. There was no evidence upon which a finding that Columbia had no property in Parcel II could be predicated.

■ There was also error in severing the trial of the three parcels and of the several interests. Columbia was claiming severance damage. If there were property of Columbia in Parcel II, then this was a dispute as a material fact of which there has been no trial anywhere. The correct method of settling this case was by a trial of the tract as a whole. The just compensation as determined for the whole tract, including fee simple title and the overlying interests, should have been deposited. The landowners and the District then would have been required to settle by proceedings in the nature of interpleader that portion of the total compensation to which each was entitled.

Columbia properly assigns as error the segregation of the issues of fact and law as to Parcel II from those of Parcels I and III. This is sufficient because of the matters just pointed out.

Columbia assigns as error the entry of judgment as to Parcel II, as follows:

"At the time of the commencement of this action, the defendant, Columbia Irrigation District, a municipal corporation, held no title or ownership in or to the lands herein designated as Parcel II, and holds no compensable interest therein by reason of the acquisition of said lands by the plaintiff, United States of America; that no compensation is due said defendant by reason of said taking.

"All right, title and interest of the Columbia Irrigation District, a municipal corporation, defendant herein, in and to the lands in Parcel II consisting of Segments F, G, H, J, K, L, P, Q, R, S and T as described in Exhibit 'A', attached hereto, are hereby held and confirmed to have vested in the United States of America."

It was beyond the authority of the District Court to adjudicate upon the record before us the question as to whether Columbia had property in Parcel II. The inconsistency of condemning the right, title and interest of Columbia in this realty and at the same time pointing out that this District had no compensable interest therein is patent, as has already been pointed out. If it had no property, condemnation was futile. If it had property therein, just compensation should have been paid therefor. The judgment was erroneous.

■ But this Court will outline the basis so that there will be no difficulty on the new trial. (1) The formal contract which the government agents negotiated with Columbia was never executed. No rights arose out of the negotiation and none out of the drafting of the agreement. (2) There is no right in the State or one of its agencies, such as a quasi-municipal corporation, to tax property in the ownership of the United States. A tax by way of assessment for local benefits cannot be levied by the State or a quasi-municipal corporation against the United States or land owned or condemned by it. (3) If the District had no property in Parcel II, there can be no severance damage and, of course, no compensation where there was no taking. The mere fact that it was an economic advantage for the District to sell a service to the people included within its boundaries is not compensable. The removal of these lands from the boundaries of the District may have rendered its business unprofitable, but, if that were

all that is involved, the government is not liable therefor.

Here Columbia, not as a state agency, but Columbia as an owner of property, commands our attention. If Columbia proves no property in Parcel II, this action is at an end.

The State of Washington is in a similar position. The lien in favor of the bondholders runs only against property of Columbia, "including its canals, ditches, and other facilities." A fortiori, if Columbia has no property in Parcel II, the State has no interest in the proceeding.

There has been a basic misunderstanding by the lawyers for the government as to the property rights involved. If the government condemn Parcel Blackacre, belonging in fee simple to A but over which Whiteacre, belonging to B, has an appurtenance such as a road, full value must be paid to both A and B. The acquisition of fee simple title from A and paying full value therefor will not carry with it the overlying interest. In fact, the government generally condemns subject to existing easements for public roads, railroads and power lines. Even though the fee simple title to Blackacre is also rendered more valuable by the existence of the easement, the payment of the enhanced value to A will not constitute just compensation to B.

B must therefore be joined as a party and paid just compensation for the easement which has been taken. There is also severance damage payable by virtue of cutting Whiteacre off from the easement over Blackacre. The measure of this compensation depends upon the circumstances. If there were a body of uranium on Whiteacre, which could not be removed in any manner, the damage might be consequential.

Here, if Columbia prove, as the intimations in the record seem to demonstrate, that it possesses property consisting of canals, ditches and other facilities on the lands of Parcel II, payment must be made therefor. If it also be shown that these physical properties are concomitant with incorporeal hereditaments recognized by the common law as easements appurtenant to lands of Parcel I, owned by Columbia, these must be paid for also. Such easements might consist of rights of way for canals, laterals and ditches, the right to flow water through such facilities, and the right to deliver water at a particular parcel of land and receive payment therefor. These rights cannot exist in vacuo. There must be the ditches, canals and facilities on the ground in Parcel II. These easements cannot exist in gross; these must be appurtenant to another parcel of land.

If the right to a canal and an easement for a right of way therefor, together with the right to deliver water to a parcel of land, existed in a private corporation and the government condemned that property right, just compensation would necessarily be paid therefor. The mere fact that this property right is lodged in a public body should make no difference. It is nonsensical to confuse this property right, if it exist, with the power of taxation or the governmental power to levy assessments to pay for local improvement.

Reversed.

(The death of Senior Circuit Judge DENMAN occurred on March 9, 1959. Although he heard the oral argument, he did not participate in the foregoing decision.)